888 A.2d 775

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Hector CASTILLO, Appellee.**

Supreme Court of Pennsylvania.

Argued April 11, 2005.

Decided Dec. 29, 2005.

Hugh J. Burns, Arnold H. Gordon, Ronald Eisenberg, Philadelphia, Jason E. Fetterman, for Com.

David Scott Rudenstein, for Hector Castillo.

Peter Rosalsky, Philadelphia, for Defender Association of Philadelphia.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice BAER.

We granted review of this case, consolidated it with our review of *Commonwealth v. Schofield,* 580 Pa. 4, 858 A.2d 1157 (2004), and directed the parties to address the following issue:

> Should this Court reconsider its decisions in *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998), and *Commonwealth v. Butler,* 571 Pa. 441, 812 A.2d 631 (2002), so as to allow discretion in the intermediate appellate courts to review an issue that was not raised in a timely statement of matters complained of on appeal under Pa.R.A.P.1925(b); [1] if so, what standards should be imposed to guide such discretion.

1. In relevant part, Pa.R.A.P.1925, Opinion in Support of Order, provides as follows:

*Commonwealth v. Castillo,* 580 Pa. 3, 858 A.2d 1156 (2004). We now reaffirm the bright-line rule of *Lord* and *Butler,* reversing the Superior Court, which addressed an issue raised in an untimely Pa.R.A.P.1925(b) statement.

In the case at bar, the defendant, Hector Castillo, was charged with five counts of aggravated assault and related crimes resulting from an incident where he and his co-defendants fired over fifty shots on a public street in Philadelphia, wounding two people. In January 1999, the prosecutor mentioned in opening statements that she would present evidence that the case involved drug-turf wars. After counsel for Castillo and his co-defendants successfully prevented the admission of the relevant evidence, counsel for one of the co-defendants suggested in closing argument that the prosecutor's statement regarding drug-turf wars was an unsupported smear tactic against the co-defendants.

In response, the prosecutor, in her closing statement, asked the jury to remember that the defense had objected numerous times to her attempts to introduce such evidence. Despite objection from defense counsel, the trial court allowed the prosecutor to pursue the argument. The prosecutor then attempted to ask the jury to consider that she was prevented by law from introducing relevant evidence. Defense counsel, however, objected before the prosecutor completed the rhetorical question.[2] The trial court sustained the objection and

(a) General rule. Upon receipt of the notice of appeal the judge who entered the order appealed from, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief statement, in the form of an opinion, of the reasons for the order, or for the rulings or other matters complained of, or shall specify in writing the place in the record where such reasons may be found. (b) Direction to file statement of matters complained of. The lower court forthwith may enter an order directing the appellant to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on the appeal no later than 14 days after entry of such order. A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of.

**2.** Specifically, the prosecutor asked, "And so I ask you to take into consideration that maybe there were some things I was not permitted by law ..."

instructed the prosecutor not to continue in that vein. Following closing arguments, the court issued *sua sponte* a curative instruction and, after dismissing the jury, asked if defense counsel considered the instruction adequate. Counsel indicated satisfaction with the instruction. The jury convicted Castillo on all charges, and the court sentenced him in June 1999.

Castillo neither filed post-trial motions nor appealed within the requisite time periods. However, in December 1999, Castillo filed a petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–46, seeking reinstatement of his appellate rights *nunc pro tunc*. After the trial court reinstated his appellate rights in July 2002 and appointed new counsel, Castillo filed a notice of appeal in August 2002, and the trial court, on September 10, 2002, ordered Castillo to file a Pa. R.A.P.1925(b) statement. In violation of Pa.R.A.P.1925(b)'s requirement that an appellant file his statement within fourteen days after entry of the trial court's directive order, Castillo waited until on or about November 1, 2002 [3] to file what was then an untimely statement.

In his untimely Pa.R.A.P.1925(b) statement, Castillo included only the issue alleging prosecutorial misconduct relating to the above-described exchange between the prosecutor, his counsel, and the court. Castillo then filed a brief in Superior Court, raising for the first time issues of trial court error and counsel ineffectiveness in addition to the previously raised issue of prosecutorial misconduct. The Superior Court, in an unpublished memorandum decision, refused to consider the issues not specifically raised in the Pa.R.A.P.1925(b) statement, but did address the prosecutorial misconduct issue raised in the untimely Pa.R.A.P.1925(b) statement. Citing to *Commonwealth v. Alsop*, 799 A.2d 129 (Pa.Super.2002) (addressing issues raised despite the untimeliness of Pa.R.A.P. 1925(b) statement, where trial court addressed the issues in its Pa.R.A.P.1925(a) opinion) and *Commonwealth v. Ortiz*, 745 A.2d 662 (Pa.Super.2000) (same), the court held that it could address the claims raised despite the untimely submission,

---

**3.** The trial court referenced the date of October 30, 2002. The one day discrepancy is irrelevant to our inquiry and this analysis.

because the trial court had addressed the issue. The court then found that Castillo was entitled to a new trial as a result of prosecutorial misconduct.[4]

The Commonwealth filed a petition for allowance of appeal challenging the Superior Court's decision to hear the issue despite the untimely Pa.R.A.P.1925(b) statement, as well as the court's resolution of the underlying substantive issue. As previously mentioned, we entered an order granting review, consolidating this case with *Schofield,* and ordering the parties to brief the above-stated question concerning reconsideration of the *Lord/Butler* rule.

The Commonwealth urges this Court to reverse the Superior Court and reaffirm the rule set forth in *Lord* and *Butler.* The Commonwealth asserts that the bright-line rule of *Lord,* which we reestablished in *Butler* just three years ago, provides for certainty of result and consistency of consequences for failure to comply with Pa.R.A.P.1925(b). In contrast, the Commonwealth maintains that prior to our decision in *Lord* litigants could not predict when Pa.R.A.P.1925(b)'s waiver provision for non-compliance would apply. The Commonwealth asserts that appellate courts applied the waiver provision inconsistently with, for example, some courts waiving issues only in those cases where meaningful appellate review of the issues was impossible, while other courts overlooked non-compliance based on the equities of the issue.

The Commonwealth further contends that even after this Court established the bright-line rule in *Lord,* the intermediate appellate courts continued to exercise discretion in applying *Lord,* in cases such as *Alsop* and *Ortiz,* relied upon by the Superior Court in the case at bar, relating to untimely Pa.R.A.P.1925(b) statements. The Commonwealth observes that following this continued exercise of discretion, this Court reasserted the bright-line rule in *Butler* by stating that "waiver under Rule 1925(b) is automatic." *Butler,* 812 A.2d at 633.

4. We will not discuss the court's rationale for reversal based on the prosecutorial misconduct issue as the merits of the issue are irrelevant to this Court's decision to reverse the Superior Court based on waiver of the issue under the bright-line rule of *Lord* and *Butler.*

In arguing in favor of the continued vitality of the bright-line rule, the Commonwealth observes that the *Lord/Butler* rule effectuates the purpose of Pa.R.A.P.1925(b), which is to aid appellate review by providing a trial court the opportunity to focus its opinion upon only those issues that the appellant plans to raise on appeal, and guarantees predictable consequences for failure to comply with the rule. Additionally, the Commonwealth offers that the simplicity of Pa.R.A.P.1925(b)'s requirements imposes only a minor burden on the appellant, who also may proactively seek from the trial court an extension of time to file or the ability to amend a statement if needed. The Commonwealth thereby requests that this Court reverse the Superior Court and conclude that Castillo waived the prosecutorial misconduct issue by failing to raise it in a timely filed Pa.R.A.P.1925(b) statement.

The Defenders Association of Philadelphia filed an amicus brief in this case and in *Commonwealth v. Schofield*, which was joined by Castillo, who did not file his own responsive brief. The Defenders Association argues that the harsh sanction of waiver should be reserved only for situations where non-compliance with Pa.R.A.P.1925(b) completely prevents appellate review. It asserts that waiver would be inappropriate where the trial court addressed the issue raised in the non-compliant statement either in its opinion or elsewhere in the record. Moreover, the Association suggests that cases could exist where waiver would not be appropriate even where the trial court's reasons are not apparent anywhere in the record. Even in those situations where waiver might be appropriate, the Association recommends that the appellate courts remand or otherwise request that the trial court address the issue, possibly by requiring appellants to file supplemental Pa.R.A.P. 1925(b) statements. The Association claims that this more lenient procedure would not impose the harsh penalties of waiver on the client, when the fault is due to counsel's failings.[5]

5. The Defenders Association also suggests the creation of mandatory hearings at the trial court level to ensure compliance with Pa.R.A.P. 1925(b). We respectfully see no justification for burdening the already

The Defenders Association, however, fails to provide a solution for the problems caused by inconsistent application of discretion which plagued the system prior to *Lord* and *Butler*. Even in arguing for relaxation of the rule, the Association demonstrates the potential for inconsistent results in its exposition of the permutations of non-compliance, where it suggests the certain kinds of non-compliance might justify waiver and others should not, depending on a fact-specific determination of the sufficiency of the record. In so doing, the Association reinforces the need for a bright-line rule to provide litigants and courts with clarity and certainty. The bench and bar under the *Lord/Butler* rule are not left to ponder whether the record sufficiently allows the appellate court to glean the trial court's rationale, either from a filed Pa.R.A.P.1925(a) opinion or elsewhere in the record. Moreover, Courts are not forced to ascertain whether an explication of the trial court's rationale is unnecessary for appellate review. To hold otherwise is to turn back the clock to a time of inconsistent results and uneven justice.

In the same vein, while the Association suggests that some degree of untimeliness does not hinder the trial court or the appellate court when the trial court obtains the Pa.R.A.P. 1925(b) statement prior to drafting its opinion, the question remains as to how long is too long. Allowing for discretion regarding timeliness will result in inconsistencies. For example, when faced with the lack of a timely Pa.R.A.P.1925(b) statement, one trial court might file quickly and efficiently an opinion waiving all issues, while another might address the issues it believes the appellant will raise, and still another might delay filing an opinion until a statement is received. If the appellant in each hypothetical case eventually files an equally untimely statement, the appellate court in the first case would waive the issues that the trial court waived, while in the second two scenarios, under current Superior Court precedent, the appellate court could address the issues so long as the trial court addressed the same issues in its opinion. As

busy trial courts with the role of supervising counsel. It is incumbent upon all lawyers to follow court rules without judicial oversight.

a result, the same factual situation could produce diametrically opposed results depending on how quickly a trial court files its opinion after the expiration of the Pa.R.A.P.1925(b) filing period. As referenced above, we decline to adopt a position which will yield unsupportable distinctions between similarly situated litigants.

Thus, the *Lord/Butler* rule remains necessary to insure trial judges in each appealed case the opportunity to opine upon the issues which the appellant intends to raise, and thus provide appellate courts with records amendable to meaningful appellate review. *See Lord*, 719 A.2d at 308. This firm rule avoids the situation that existed prior to *Lord* where trial courts were forced to anticipate which issues the appellant might raise and appellate courts had to determine "whether they could conduct a 'meaningful review' despite an appellant's failure to file a Pa.R.A.P.1925(b) statement or to include certain issues within a filed statement." *Butler*, 812 A.2d at 633. Moreover, the system provides litigants with clear rules regarding what is necessary for compliance and certainty of result for failure to comply.

While the resulting waiver may appear harsh, we note that the harshness is alleviated by the ability of criminal defendants to seek relief by challenging the effectiveness of their counsel and civil defendants to file malpractice actions. Specifically, we acknowledge our recent decision in *Commonwealth v. Halley*, 582 Pa. 164, 870 A.2d 795 (2005), where we held that when all of a criminal defendant's issues are waived on direct appeal under *Lord* due to his attorney's failure to file a Pa.R.A.P.1925(b) statement, we will presume that the defendant suffered prejudice due to the denial of effective assistance of counsel. As counsel's actions in *Halley* resulted in the denial of the criminal defendant's right to a direct appeal, we held that the appropriate remedy was to reinstate the defendant's right to pursue a direct appeal. Moreover, the severity of the sanction is less burdensome due to the minimal requirements for compliance under Pa.R.A.P.1925(b) and the trial courts' demonstrated willingness to grant extensions to

proactive appellants prior to the expiration of the filing period.[6]

Therefore, we reverse the Superior Court and reaffirm the bright-line rule first set forth in *Lord* that "in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P.1925. Any issues not raised in a Pa.R.A.P.1925(b) statement will be deemed waived." *Lord,* 719 A.2d at 309.

In reversing the court below, we specifically voice our disapproval of prior decisions of the intermediate courts to the extent that they have created exceptions to *Lord* and have addressed issues that should have been deemed waived. *See, e.g., Commonwealth v. Alsop,* 799 A.2d 129 (Pa.Super.2002) (declining to waive issues raised in untimely Pa.R.A.P.1925(b) statement based on finding of no impediment to appellate review given trial court's discussion of issues); *Commonwealth v. Ortiz,* 745 A.2d 662 (Pa.Super.2000) (same).

The order of the Superior Court is hereby **REVERSED.**

Chief Justice CAPPY, Justice CASTILLE and NIGRO, Justice NEWMAN and Justice EAKIN join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice SAYLOR, dissenting.

As the majority notes, this appeal was allowed to reconsider the decisions in *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998), and *Commonwealth v. Butler,* 571 Pa. 441, 812 A.2d 631 (2002), which mandate a strict application of the waiver rule under Pa.R.A.P.1925(b) pertaining to defects associated with the filing of a statement of matters complained of on appeal.

**6.** Moreover, we acknowledge that the Commonwealth, in its brief to this court, opined that the Superior Court's actions in *Commonwealth v. Moran,* 823 A.2d 923 (Pa.Super.2003) were not inconsistent with *Lord* and *Butler.* In that case, the Superior Court granted appellant's request for a remand to permit amendment of his timely Pa.R.A.P. 1925(b) statement.

Both the Commonwealth and *amicus* recognize that the bright-line rule adopted in *Lord*, solidified in *Butler*, and reaffirmed by the majority in the present case covers a vast range of circumstances, falling within several broad categories, including total non-compliance by failing to file any Rule 1925(b) statement; imperfect procedural compliance (such as late filing or failure to secure proper docketing and/or transmission to the trial judge); and imperfect substantive compliance (for example, a failure to include or sufficiently describe claims to be pursued in the appeal). In a number of the circumstances, as in the companion case, *Commonwealth v. Schofield*, 585 Pa. 389, 888 A.2d 771, 2005 WL 3554865 (2005), the purposes of the rule may be entirely satisfied, as the trial court will have actually received the Rule 1925(b) statement and utilized it in preparing its opinion under Rule 1925(a).[1] In other instances, an opinion (or additional opinion) of the trial court may not be truly necessary for appellate review, as where post-trial or post-sentence motions have been litigated and fully addressed by the trial court, or where the claim to be pursued on appeal concerns a purely legal issue that is subject to *de novo* appellate review.[2]

---

**1.** In *Schofield*, the Superior Court, relying on *Butler*, determined that the appellant must file a 1925(b) statement with the judge and the clerk of courts; therefore, merely sending the statement to the judge was insufficient, and resulted in waiver. However, *Butler* involved an unverified 1925(b) statement that appellant claimed to have provided to the court. *See Butler*, 571 Pa. at 446–47, 812 A.2d at 634. In *Schofield*, the trial judge indicated that he had received the statement.

**2.** In *Commonwealth v. Alsop*, 799 A.2d 129 (Pa.Super.2002), President Judge Del Sole explained: "There is no functional difference when the issues are addressed in a trial court opinion written in response to a 1925 statement, or when anticipated issues are addressed by the trial court absent such a statement. In either case, the existence of the trial court opinion allows for 'meaningful and effective' appellate review." *Id.* at 136 (Del Sole, P.J., concurring). Additionally, President Judge Del Sole noted that "sound policy reasons exist not to find waiver. The public is better served when disputes are resolved on their merits rather than by default." *Id.* Along these lines, in *Schofield*, Judge Klein dissented from the Superior Court's finding of waiver, stating, "If a trial court understands the issues and has provided th[e] [appellate] court with an explanation for its order in the 1925(a) opinion, we are able to conduct meaningful appellate review and need not be concerned with the timeliness of the filing of the statement. To do otherwise

In this broad universe of circumstances, although I recognize the validity of the concerns that motivated *Lord* and *Butler* and which underlie the majority's present reasoning, on balance, I favor the discretionary review paradigm that is reflected in the explicit terms of Rule 1925(b), which can and has been implemented under guidance supplied in seminal decisions of this Court and the intermediate appellate courts channeling the exercise of discretion. *Accord Butler*, 571 Pa. at 453, 812 A.2d at 638 (Saylor, J., concurring). In this regard, I agree with *amicus* that, relative to counseled appeals, the policy allowing for discretionary review (coupled with curative remands, where appropriate, to secure a sufficient Rule 1925(a) opinion) better serves the ends of justice than the mechanical elimination or curtailment of direct appellate review on account of attorney derelictions. Indeed, I believe that reflexive displacement of appeals, in whole or in part, based on factors outside the litigants' direct control is in substantial tension with the right to direct appellate review conferred by the Pennsylvania Constitution. *See* PA. CONST. art. V, § 9. Concerning *pro se* litigants, particularly as applied in cases such as *Schofield* in which there has been meaningful and substantial compliance and the policy ends of Rule 1925 have been satisfied, *see supra* note 1, the strict waiver policy also seems to me to be unnecessary and an unduly harsh sanction.

Certainly the majority is correct that, in certain circumstances in the criminal context, the availability of post-conviction relief based on a claim of ineffective assistance of counsel may ameliorate the consequences of counsel's noncompliance with Rule 1925(b).[3] However, in other cases, the litigant forced into the post-conviction context generally will be faced with enhanced procedural and substantive requirements.

undermines the integrity of this court and confidence in the appellate review process."

**3.** For example, in the event of unjustified, total noncompliance attributable to counsel, full reinstatement of the direct appeal is warranted, *see Commonwealth v. Halley*, 582 Pa. 164, 173, 870 A.2d 795, 801 (2005), and the petitioner thus will be restored to the position that he should have been in but for counsel's dereliction.

These include compliance with the procedural framework dictated by the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546, and a substantial and unfavorable realignment of burdens, as the post-conviction petitioner will generally be required to prove prejudice associated with an otherwise meritorious claim, as distinguished from the standard pertaining to preserved error cognizable on direct appeal, which places the burden on the Commonwealth to demonstrate harmlessness beyond a reasonable doubt. *Cf. Commonwealth v. Howard,* 538 Pa. 86, 100, 645 A.2d 1300, 1307 (1994) (elaborating on the distinction between the respective burdens relative to a preserved claim of trial court error versus one raised via ineffectiveness). In various situations as well, post-conviction review will be foreclosed, such as when the defendant's sentence will expire prior to the completion of the review, *see Commonwealth v. O'Berg,* 584 Pa. 11, 19–21, 880 A.2d 597, 602 (2005), or where the litigant acted *pro se* at the time that the appeal was lodged, and therefore, cannot proceed under an ineffectiveness theory. The availability of some latitude under Rule 1925(b) in criminal cases was also particularly significant in Pennsylvania, because the Court has abrogated the policy against enforcing waiver in the face of basic or fundamental error affecting substantive rights, *see Commonwealth v. Clair,* 458 Pa. 418, 423, 326 A.2d 272, 274 (Pa.1974), as distinguished from the practice of many other jurisdictions including the federal courts, which allow for discretionary plain error review in exceptional circumstances. *See, e.g.,* Fed. Rule Crim. P. 52(b). *See generally* 5 AM.JUR.2D APPELLANT REVIEW § 767 (2005).[4]

4. Pertaining to the civil context, the approach of fostering collateral litigation seems to me to be questionable, particularly where the post-trial motion procedure already serves as a mandatory prerequisite to issue preservation for appeal, *see Chalkey v. Roush,* 569 Pa. 462, 466–67, 805 A.2d 491, 494 (2002), thus already putting claims subject to appellate review directly before the trial court. *Accord Butler,* 571 Pa. at 452 n. 2, 812 A.2d at 637 n. 2 (Saylor, J., concurring) (commenting on the pronounced impact of the waiver doctrine in civil appeals, in light of the multiple, overlapping steps required to preserve issues). Additionally, given the time, expense, and uncertainty associated with malpractice claims, such relief may not provide a meaningful remedy

In summary, I believe that the prospect of waiver in appropriate circumstances pursuant to the express terms of Rule 1925(b) and the availability of contempt sanctions for violation of a Rule 1925(a) order provide sufficient incentives to facilitate Rule 1925's policy without unduly impinging upon the constitutional right to a direct appeal. Accordingly, I do not favor maintaining *Lord's* rule strictly foreclosing curative remands and discretionary authority such as were previously available to the intermediate appellate courts to accomplish meaningful appellate review in appropriate circumstances.

Finally, I recognize the Commonwealth's position that *Lord* represented the prevailing rule as of the time of the material noncompliance in this case, the Superior Court was bound to apply it, and any change in its dictates should be made by this Court on a prospective basis.[5] Nevertheless, this Court framed the reconsideration issue as a material one in this case, there have been persistent and legitimate questions concerning *Lord's* appropriate scope, and I believe that sound jurisprudential principles favor according the litigant the benefit of a change or clarification in such circumstances. Although I therefore support the Superior Court's decision to conduct merits review of Appellee's claim, having reviewed the Commonwealth's substantive position on the merits of the resultant award of a new trial, I believe that it may have merit. Thus, I would not merely affirm the award at this juncture. Rather, I would issue a supplemental grant order and briefing schedule to permit the Court to address the award, since, in light of our limited grant order, Appellee has not developed his position in support of its validity.

For these reasons, I respectfully dissent relative to the Court's mandate.

for counsel's noncompliance with the rule, particularly where the foregone issues are non-monetary.

5. Notably, in this regard, the *Lord* rule itself was announced prospectively. *See Lord*, 553 Pa. at 420, 719 A.2d at 309.