J-S52035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: Z.I., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.R., FATHER | : | No. 366 MDA 2017 |

Appeal from the Order Entered January 30, 2017
In the Court of Common Pleas of Lancaster County
Juvenile Division at No(s):  CP-36-DP-0000053-2016

| IN THE INTEREST OF: Z.I., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.R., FATHER | : | No. 367 MDA 2017 |

Appeal from the Order Entered January 30, 2017
In the Court of Common Pleas of Lancaster County
Juvenile Division at No(s):  CP-36-DP-0000053-2016

BEFORE:   GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED AUGUST 18, 2017**

Appellant, K.R. ("Father"), appeals from the orders entered in the Lancaster County Court of Common Pleas, Juvenile Division, which found aggravated circumstances existed and reasonable efforts were not required by the Lancaster County Children and Youth Services ("CYS") to reunify Father and his minor child, Z.I. ("Child"), born February 2010.  We affirm.

The relevant facts and procedural history of this case are as follows. Most recently, CYS became involved with this family on February 24, 2016,

when CYS received a report that stated mother's paramour ("Paramour") had physically abused Child's sibling. As a result, CYS filed petitions on February 25, 2016, for temporary custody of Child and her minor siblings. That same date, the Juvenile court granted the petitions and placed Child and her siblings in CYS' custody. On February 29, 2016, the court held a shelter care hearing and continued Child's placement with CYS. CYS filed a motion for a finding of aggravated circumstances against mother on March 9, 2016, and alleged that mother had witnessed Paramour abuse mother's child, and Mother did not intervene and/or seek medical treatment for her child. On April 11, 2016, the court adjudicated Child dependent after finding Child was without sufficient food and mother had been using illegal drugs. Additionally, the Juvenile court found aggravated circumstances existed against mother and permitted CYS to discontinue reasonable efforts to reunify mother and Child.

The Juvenile court held a hearing on May 23, 2016, and approved CYS' request to place Child in a kinship resource home. At the hearing, Paramour refused to cooperate with court-ordered genetic testing to confirm his paternity of Child. Mother and Paramour, however, both testified under oath that Paramour was Child's biological father. On May 24, 2016, the court issued an order directing CYS to proceed with the case as if Paramour is Child's father. Father continued to refuse to cooperate with genetic testing. As a result, on July 18, 2016, the court directed the office of Domestic

Relations to perform genetic testing on Father to confirm paternity. On October 28, 2016, CYS received Father's test results, which confirmed his paternity.

CYS performed a background check on Father and discovered an investigation report (CY-48 report) from the Northumberland County CYS, which stated that: (a) on April 1, 2015, Father was indicated as a perpetrator of physical abuse against his biological child, N.R.R. (born December 2011); (b) N.R.R. suffered severe burning/scalding to her hands, which left permanent scarring and possible deformity; and (c) N.R.R.'s injuries were consistent with someone forcibly holding N.R.R.'s hand under scalding water. So, CYS filed a motion on November 3, 2016, for a finding of aggravated circumstances against Father and attached a copy of the CY-48 report. CYS filed a petition for a permanency hearing on November 7, 2016, claiming no further efforts to reunify Father and Child were required due to aggravated circumstances. CYS asked the court to change the primary placement goal from reunification to adoption.

On November 28, 2016, the Juvenile court appointed counsel to represent Father. Following several continuances, the court held a hearing on CYS' petitions on January 30, 2017. At the hearing, CYS caseworker Kelsey Curcio testified that after CYS learned of Father's paternity of Child, CYS checked Father's history of involvement with other CYS agencies. Ms. Curcio said CYS discovered the CY-48 report, which indicated Father as a

perpetrator of physical abuse against his minor daughter, N.R.R., in April 2015. Ms. Curcio explained N.R.R. suffered severe burning/scalding to her hand, which left permanent scarring and possible deformity. Moreover, Ms. Curcio believed N.R.R.'s injuries constituted serious bodily injury, which formed the basis of CYS' request for a finding of aggravated circumstances against Father. In light of CYS' findings, Ms. Curcio requested the court to find aggravated circumstances against Father and approve CYS' proposed permanency plan.

On January 30, 2017, the Juvenile court entered an order finding aggravated circumstances against Father, and entered a dispositional order approving CYS' proposed permanency plan, changed Child's primary placement goal to adoption, and ordered that no visitation occur. On February 28, 2017, Father timely filed notices of appeal and Rule 1925(a)(2)(i) statements from the court's January 30, 2017 orders. On March 23, 2017, this Court *sua sponte* consolidated the appeals.

Father raises two issues for our review:

> WHETHER THE [JUVENILE] COURT ERRED IN ITS DISPOSITIONAL ORDER WHEN IT DETERMINED THAT FATHER…SHOULD RECEIVE A CHILD PERMANENCY PLAN WITH NO PLAN FOR REUNIFICATION WITH…CHILD?
>
> WHETHER THE [JUVENILE] COURT ERRED IN ITS AGGRAVATED CIRCUMSTANCES ORDER WHEN IT DETERMINED THERE WAS SUFFICIENT EVIDENCE PRESENTED THAT AGGRAVATED CIRCUMSTANCES FOR ABUSE OF A CHILD EXISTED AS TO FATHER?

(Father's Brief at 8).

For purposes of disposition, we combine Father's issues, which he addresses in his brief out of sequence. Father argues the Juvenile court based its finding of aggravated circumstances against Father solely on Ms. Curcio's testimony, which focused on the content of the CY-48 report. Father avers Ms. Curcio's testimony alone was insufficient. Father maintains CYS did not offer the report as an exhibit at the January 30, 2017 hearing and/or present testimony from a Northumberland County CYS caseworker. Father concludes CYS failed to present clear and convincing evidence of aggravated circumstances. Additionally, Father asserts, for the first time in his brief, that the record does not mention when CYS requested a finding of aggravated circumstances against Father, which makes it impossible to determine whether the motion was timely filed, and CYS did not provide Father with notice of the motion.

Next, Father challenges the Juvenile court's dispositional order that approved CYS' permanency plan of no reunification of Father and Child. Father argues the court failed to assess and/or demand proof of Father's inability to parent. Father claims the January 30, 2017 hearing was the first time he was present, represented by counsel, and allowed to give evidence. Father asserts the court based its dispositional order solely on the CY-48 report. Moreover, Father maintains the court failed to consider that the report involved a single incident. Father points out CYS did not show evidence of continued abuse. For these reasons, Father concludes he should

have received a plan for reunification with Child, and requests a remand so he can demonstrate his ability to parent. We disagree with Father's contentions.

Our Supreme Court set forth our standard of review for dependency cases as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010). The Pennsylvania Juvenile Act,[1] which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"),[2] controls issues pertaining to the custody and placement of dependent children. *Id.* "The policy underlying these statutes is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. Consistent with this underlying policy, the 1998 amendments to the Juvenile Act, as required by the ASFA, place the focus of dependency proceedings, including change of goal proceedings, on the child." *Id.* In other words, these Acts equally emphasize the best interests of the child is at the heart of the court proceedings; although the

_____

[1] 42 Pa.C.S.A. §§ 6301-6365.

[2] 42 U.S.C. § 671 *et seq*.

- 6 -

reunification of children placed in foster care with their natural parents is a primary goal, the ASFA "was designed to curb an inappropriate focus on protecting the rights of parents when there is a risk of subjecting children to long term foster care or returning them to abusive families." *In re C.B.*, 861 A.2d 287, 295 (Pa.Super. 2004), *appeal denied*, 582 Pa. 692, 871 A.2d 187 (2005).

> Both statutes are compatible pieces of legislation seeking to benefit the best interest of the child, not the parent. There is no denying that ASFA promotes the reunification of foster care children with their natural parents when feasible, but the one notable exception to the goal of reunification is where aggravated circumstances are extant in the home, which encompasses abandonment, torture, and/or abuse of a chronic or sexual nature:
>
> > (D)   reasonable efforts … shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that—
> >
> > > (i) the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse)[.]
>
> 42 U.S.C. § 671(a)(15)(D)(i).   In like fashion, Pennsylvania's Juvenile Act focuses upon reunification of the family, which means that the unity of the family shall be preserved "whenever possible."   42 Pa.C.S.A. § 6301(b)(1).   However, as with ASFA, all family reunification may cease in the presence of a finding of aggravated circumstances…

*In re M.S.*, 980 A.2d 612, 615 (Pa.Super. 2009), *appeal denied*, 603 Pa. 710, 985 A.2d 220 (2009).  Section 6351 of our Juvenile Act provides in pertinent part:

**§ 6351. Disposition of dependent child**

\* \* \*

**(e) Permanency hearings.—**

(1) The court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity. . . .

(2) If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child has been adjudicated dependent, the court shall then determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the child's parent, guardian or custodian or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as provided in paragraph (3).

\* \* \*

42 Pa.C.S.A. § 6351(e)(1-2). "Safety, permanency, and the well-being of the child must take precedence over all other considerations, including the rights of the parents." *In re M.S., supra* at 615. The decision whether to pursue reunification is made on a case-by-case basis. *In re A.H.*, 763 A.2d 873, 878 (Pa.Super. 2000). After the trial court finds aggravated circumstances, the court has the discretion to order the cessation of

reunification services. *Id.* *See* 42 Pa.C.S.A. § 6351(e) (stating finding of aggravated circumstances requires court to determine if reasonable efforts shall continue to reunify family).

The Juvenile Act defines "aggravated circumstances" to include the following circumstance:

> **§ 6302.  Definitions**
>
> **"Aggravated circumstances."**  Any of the following circumstances:
>
> \*    \*    \*
>
> (2) The child or another child of the parent has been the victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated physical neglect by the parent.

42 Pa.C.S.A. § 6302.  "Serious bodily injury" means "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Id.*  Section 6334 of the Juvenile Act addresses petitions alleging aggravated circumstances in pertinent part as follows:

> **§ 6334.  Petition**
>
> \*    \*    \*
>
> **(b)  Aggravated circumstances**—
>
>     (1)   An allegation that aggravated circumstances exist may be brought:
>
>         (i) in a petition for dependency with regard to a child who is alleged to be a dependent child; or

(ii) in a petition for a permanency hearing with regard to a child who had been determined to be a dependent child.

(2) The existence of aggravated circumstances may be alleged by the county agency or the child's attorney. If the county agency reasonably believes that aggravated circumstances exist, it shall file the appropriate petition as soon as possible but no later than 21 days from the determination by the county agency that aggravated circumstances exist.

(3) A petition for dependency or a permanency hearing that alleges aggravated circumstances shall include a statement of the facts the…child's attorney intends to prove to support the allegation. …

42 Pa.C.S.A. § 6334(b).

Instantly, the Juvenile court adjudicated Child dependent on April 11, 2016, and found aggravated circumstances against mother. Child's biological father remained uncertain until a test confirmed Father's paternity on October 28, 2016. Shortly thereafter, CYS discovered a CY-48 report that indicated Father was the perpetrator of physical abuse against another child, N.R.R. The report stated: (a) on April 1, 2015, Father was indicated as a perpetrator of physical abuse against his biological child, N.R.R. (born December 2011); (b) N.R.R. suffered severe burning/scalding to her hands, which left permanent scarring and possible deformity; and (c) N.R.R.'s injuries were consistent with someone forcibly holding N.R.R.'s hand under scalding water. So, CYS filed a motion on November 3, 2016, for a finding of aggravated circumstances against Father. CYS attached the CY-48 report to its motion for the court's consideration. At the January 30, 2017 hearing,

Ms. Curcio summarized the content of the CY-48 report and stated, *inter alia*, that N.R.R. suffered severe burning/scalding to her hand, which left permanent scarring, possible deformity, and constituted serious bodily injury. The record supports Ms. Curcio's position that Father was responsible for the physical abuse of N.R.R. Thus, we conclude the court reasonably found aggravated circumstances against Father. *See* 42 Pa.C.S.A. § 6302.

Regarding Father's challenge to the Juvenile court's dispositional order, we observe the court was well within its discretion to discontinue reunification efforts between Father and Child after the court found aggravated circumstances against Father. *See* 42 Pa.C.S.A. § 6351(e); *In re M.S., supra*; *In re A.H., supra*.

To the extent Father complains on appeal that CYS did not timely file its motion for a finding of aggravated circumstances against Father and/or give Father notice of the motion, Father waived these issues for appeal. *See* Pa.R.A.P. 302(a) (stating: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Castillo*, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) (holding issues not raised in Rule 1925(b) statement are waived on appeal); *In re L.M.*, 923 A.2d 505 (Pa.Super. 2007) (applying those Rule 1925 waiver standards in family law context). Moreover, the record belies Father's contentions. The record makes clear CYS discovered the CY-48 report on November 3, 2016,

**after** it learned of Father's paternity on October 28, 2016. CYS timely filed its motion for a finding of aggravated circumstances against Father on November 3, 2016, well within the 21-day allotted timeframe. ***See*** 42 Pa.C.S.A. § 6334(b)(2). Additionally, the court's January 9, 2017 order confirmed CYS provided Father with notice of the aggravated circumstances hearing. Further, Ms. Curcio testified at the January 30, 2017 hearing that CYS provided Father with notice of the hearing. Accordingly, we affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2017